THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| KAREN LUEBKE, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:23-cv-03055-TLB |
| v. | ) ) | |
| REGIONAL FAMILY MEDICINE, | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**

Defendant, Regional Family Medicine, P.A., by and through its attorney, O'Hagan Meyer LLC, submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) and respectfully requests that this Honorable Court dismiss all counts of Plaintiff's Complaint.

**I.      INTRODUCTION**

Defendant Regional Family Medicine, P.A. ("RFM"), formerly the Kerr Medical Clinic, is a family care clinic located in Mountain Home, Arkansas, which has served patients in the Twin Lakes Area since the 1960's. RFM provides primary care services to residents of Mountain Home and surrounding communities and treats patients of all ages, from children through adult and geriatric care. RFM has received national recognition for its commitment to patient-centered processes.

On June 26, 2023, RFM experienced an IT outage that disrupted its network. (ECF No. 2-1). RFM responded immediately by launching an investigation through an external cybersecurity expert. *Id.* The investigation revealed that, prior to the outage, an unknown cybercriminal had

gained unauthorized access to RFM's system and possibly accessed files containing patients' personal information. *Id.* Thereafter, RFM notified *all impacted individuals* of the event. *See Id.* Plaintiff alleges she received a notice from RFM explaining that the security event *may* have involved certain of her information including her name, date of birth, and Social Security Number. (ECF No. 2-1). Less than one week after receiving a notice from RFM, Plaintiff, Astina Luebke ("Luebke"), filed this purported class action lawsuit. (ECF No. 2). Importantly, Plaintiff has not alleged that there has been any actual misuse of her personal information or that of any putative Class Member. Nor has Plaintiff alleged that she or any putative Class Member suffered any adverse consequences stemming from the breach aside from her fear of future harm.

Unfortunately, data security events occur with regularity across the nation and even small community clinics like RFM are not immune from the calculated efforts of sophisticated cybercriminals and their ever-evolving approaches to targeting unsuspecting businesses.  As courts around the country have instructed, such businesses should not be punished for identifying and investigating such threats, and issuing notices to all potentially affected individuals when such events occur. To that end, issues such as Article III standing and pleading actual cognizable injury must be closely scrutinized at the pleading stage. In the Complaint, Plaintiff purposefully avoids acknowledging that she has suffered no actual concrete harm to date. To be clear, Luebke does not allege that there has been any actual misuse of her – or any putative Class Member's – information, nor that she was the victim of identity theft or financial fraud. Further, she has not alleged that she reasonably incurred any out-of-pocket expenses as a result of the event.  Rather, Plaintiff's claims are based solely on the potential for future harm. In short, Plaintiff's sheer lack of allegations related to any cognizable harm establishes that she lacks Article III standing and the Complaint should be dismissed pursuant to Rule 12(b)(1).

This lack of standing is but one of the fatal flaws contained on the face of Luebke's Complaint. Initially, even if she could establish standing based upon the "harm" alleged, the type of harm or injury alleged does not amount to a cognizable damages claim to support any of the eight causes of action asserted. Moreover, instead of setting forth specific factual allegations to support the required elements of each cause of action, Luebke's Complaint contains a litany of assumptions, speculation, and allegations regarding what could happen in a data security event when a cybercriminal obtains and misuses personal information, generally. However, Luebke does not and cannot allege that these things happened to her or any Class Member. Accordingly, when these irrelevant allegations are removed, all that is left are allegations that *some* of Luebke's PHI *may* have been involved and that she is concerned that this *may* cause her to suffer some *potential* undefined harm in the future. Put simply, there is nothing in Plaintiff's Complaint to support a viable claim for compensable damages under Arkansas law and all counts of the complaint should be dismissed.

Finally, in addition to the lack of damages, each and every claim in Plaintiff's Complaint contains other fatal deficiencies under Arkansas law. As to the Negligence claim, Luebke cannot establish the threshold element of a legal duty; Plaintiff's Negligence Per Se claim must fail, as alleged violations of the FTC Act do not establish negligence per se under Arkansas law; Plaintiff's Breach of Confidence claim must fail as Arkansas does not recognize that cause of action; Plaintiff's claim for Breach of Implied Contract should be dismissed, as Plaintiff has failed to allege sufficient facts establishing the existence of an implied contract; Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing should be dismissed, as Arkansas law does not recognize implied covenants absent an express contract; Plaintiff's Fiduciary Duty Claim must fail because RFM did not owe Plaintiff a fiduciary duty; Plaintiff's unjust enrichment claim should be

dismissed as RFM received no benefit in exchange for receiving Plaintiff's personal information; and finally, Plaintiff's Declaratory Judgment claim should be dismissed as this is not an appropriate claim based upon the allegations.

Accordingly, Plaintiff's Complaint should be dismissed in its entirety without leave to amend pursuant to Fed. R. Civ. Pro 12(b)(1) and 12(b)(6).

## II.   <u>SUMMARY OF LUEBKE'S ALLEGATIONS</u>

On December 18, 2023, Plaintiff filed the instant lawsuit on behalf of herself, and purportedly on behalf of a nationwide putative class consisting of "[a]ll individuals within the United States of America whose PII was exposed to unauthorized third parties as a result of the data breach discovered by Defendant on June 26, 2023." (ECF No. 2, ¶¶ 30). Luebke's central allegation of wrongdoing against RFM is that it failed to take steps to adequately safeguard her and the Class Members' PHI and failed to detect and provide notice of the subject data breach in a timely fashion. (*Id*. at ¶¶ 110).

Luebke, a resident of Arkansas, alleges that she, like the Class Members, was required to provide certain PHI to RFM, including *inter alia*, names and dates of birth, in order to receive healthcare. (*Id*. at ¶¶ 47, 146). Luebke alleges that she and the putative Class Members had a reasonable expectation that RFM would implement safeguards to protect their PHI. (*Id*. at ¶¶ 47). Luebke's allegations surrounding her claimed damages are presented *theoretically* as she characterizes her damages as, "injury arising from the substantially increased *risk* of fraud, identity theft, and misuse," of her PHI. (*Id*. at ¶¶ 20)(emphasis added). Throughout her Complaint, Plaintiff refers to these hypothetical damages, alleging "Plaintiff's and Class Members' PII *may* end up for sale on the dark web or fall into the hands of companies that will use the detailed PII for targeted marketing," (*Id*. at ¶¶ 49)(emphasis added); "[i]dentity thieves *can* use PII, such as that of

Representative Plaintiff and Class Members which Defendant failed to keep secure, to perpetrate various crimes that harm victims," and "may commit various types of government fraud," using the information (*Id*. at ¶¶ 82) (emphasis added); "fraud to which Defendant *may* have exposed Representative Plaintiff and Class Members." (*Id*. at ¶¶ 90) (emphasis added). Plaintiff goes as far as listing the potential crimes a hypothetical cybercriminal *could* commit using PHI or PII. Specifically, Plaintiff alleges, "identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund." ((*Id*. at ¶¶ 82). Further, Plaintiff alleges damages stemming from her fear that these hypothetical harms could materialize sometime in the near or distant future. (*Id*. at ¶¶ 19, 87). Finally, the only actual expenses Plaintiff alleges to have incurred are those stemming from her fear of future harm. (*Id. at* ¶¶ 177, 122, 143, 164).  Importantly, Luebke does not allege that the types of harm she fears – namely, the actual misuse of her information – has occurred. (*See, Id.*, generally).

Based upon the foregoing, Luebke asserts the following causes of action: (1) Negligence; (2) Negligence Per Se; (3) Breach of Confidence; (4) Breach of Implied Contract; (5) Breach of the Implied Covenant of Good Faith and Fair Dealing; (6) Breach of Fiduciary Duty; (7) Unjust Enrichment, and (8) Declaratory Judgment. Luebke purports to bring all of these causes on her own behalf and on behalf of the putative class set forth above.

## III.   **PLEADING STANDARDS**

RFM moves to dismiss Luebke's Complaint under both Federal Rules of Civil Procedure 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim. As to standing, "Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion*

*LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id*. (citation omitted). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id*. "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *Id*. at 2207. Each of these elements is "an indispensable part of the plaintiff's case, [and] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Sierra Club v. United States Army Corps of Eng'rs*, No. 4:10CV4017, 2011 U.S. Dist. LEXIS 132962, at \*7 (W.D. Ark. Nov. 16, 2011)(citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130 (1992)).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be either a "facial" challenge based on the face of the pleadings (such as the present Motion), or a "factual" challenge, in which the court considers matters outside the pleadings. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In evaluating a facial attack, "the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Branson Label, Inc. v. City of Branson, Mo*., 793 F.3d 910, 914 (8th Cir. 2015). "Where a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating each [standing] element.'" *Duqum v. Scottrade, Inc*., No. 4:15-CV-1537-SPM, 2016 WL 3683001, at \*2 (E.D. Mo. July 12, 2016) (citations omitted), *aff'd sub nom. See also, Kuhns v. Scottrade, Inc.,* 868 F.3d 711 (8th Cir. 2017).

RFM also moves to dismiss under Rule 12(b)(6) for Luebke's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require "more than a sheer possibility that a defendant has acted unlawfully" and a complaint that only pleads facts "that are 'merely consistent with' a defendant's liability" will "stop [] short of the line between possibility and probability." *Id*. at 678 (internal citations omitted). Legal conclusions "must be supported by factual allegations" and a Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678-79 (quoting *Bell Atl.,* 550 U.S. at 555); Finally, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." And in "[d]etermining whether a complaint states a plausible claim for relief," the Court is required to "draw on its judicial experience and common sense." *Id*. at 679.  Here, RFM relies only on Plaintiff's pleading and nothing outside the pleading (other than common sense) to attack Plaintiff's Complaint. Accordingly, all citations to the docket herein are to Plaintiff's Complaint, which is Docket No. 2.

## IV.   <u>ARGUMENT</u>

As evidenced by Plaintiff's wide-net approach to stating her claims, the issue of what universe of potential claims may arise from a cybersecurity incident in the healthcare context is relatively new. Notably, the first opinion by this District on the matter was issued in November of 2023, by Judge P.K. Holmes, III. *See Rodriguez v. Mena Hosp. Comm'n*, No. 2:23-cv-20020F1, 2023 U.S. Dist. LEXIS 196396, at *27 (W.D. Ark. Nov. 1, 2023). Judge Holmes, in *Rodriguez*, addressed some of the issues raised herein. However, it is worth noting that the issue of whether

the plaintiff alleged a sufficiently concrete, particularized, and actual or imminent injury to support Article III standing in a data breach context was not before the Court in *Rodriguez*. It appears that the matter will be one of first impression before this Court. However, as detailed below, binding case law from the Eighth Circuit relying on that of the United States Supreme Court; case law from the Arkansas Supreme Court; and persuasive opinions from district courts around the country addressing similar arguments are instructive and support Defendant's contention that Plaintiff lacks Article III standing, and that each of her claims should be dismissed.

A.   **Plaintiffs Complaint Must Be Dismissed Under Rule 12(b)(1) For Lack Of Standing Under Article III As She Has Not And Cannot Allege A Concrete Injury That Is Traceable to RFM's Alleged Conduct.**

To establish Article III standing, Plaintiff must: (1) present an injury that is concrete, particularized, and actual or imminent; (2) that is fairly traceable to the defendant's challenged behavior; and (3) is likely to be redressed by a favorable ruling. *Pavek v. Simon*, 467 F. Supp.3d 718, 736 (D. Minn. 2020) (quoting, *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019)).

> A plaintiff must support each element of standing 'in the same way as any other matter on which the plaintiff bears the burden of proof.' . . . Therefore, to survive a motion to dismiss for lack of jurisdiction, a plaintiff must allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing.

*Hawse v. Page*, 7 F.4th 685, 688–89 (8th Cir. 2021) (quoting, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The requirements for standing do not change in the class action context." *In re Supervalu, Inc.*, 870 F.3d at 768. Accordingly, Luebke must demonstrate standing for each claim she asserts and for each form of relief that she seeks on behalf of herself and the putative Class Members. *See, Transunion LLC*. 141 S.Ct. at 2208.

To establish an injury in fact, a plaintiff must show that her injury is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*,

8

578 U.S. 330, 339 (2016) (internal citation omitted). To be "concrete," the injury "must be 'de facto'; that is, it must actually exist"; and to be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Id*. at 339–40*; See also, TransUnion*, 141 S. Ct. at 2204 (a concrete injury is one that is "real, and not abstract" (citation omitted)). "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be certainly impending to constitute injury in fact." *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig*., 45 F. Supp. 3d 14, 24 (D.D.C. 2014) (quoting, *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *Auer v. Trans Union, Ltd. Liab. Co.*, 902 F.3d 873, 878 (8th Cir. 2018)( Mere "fears of hypothetical future harm that is not certainly impending," do not constitute a concrete injury.).

**B.** **The Mere Risk Of Identify Theft, Without Actual Harm, Does Not Establish Standing In An Action For Damages.**

Plaintiff's allegation that she is at an increased risk of future injury (or attendant harms) following the subject data breach – is foreclosed by binding precedent as enough to establish standing and dismissal under Rule 12(b)(1) is required.  Generally, a plaintiff who asserts claims based on a risk of future harm will lack Article III standing unless they can "demonstrate that the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur.'" *See In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, 870 F.3d 763, 770–72 (8th Cir. 2017) [hereinafter referred to as "*SuperValu II*"](quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014)(some internal quotation marks omitted).

The Supreme Court has drawn a distinction between claims for injunctive relief and those for money damages. Where, as here, the plaintiff seeks money damages, "the mere risk of future harm, without more, cannot qualify as a concrete harm in a suit for damages." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2198 (2021). The *Transunion* opinion, which has now been cited and

9

relied upon by multiple District and Circuit courts nationwide – including the Eighth Circuit – establishes black letter law, that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *Id.* In *Transunion,* the plaintiffs alleged that TransUnion violated the Fair Credit Reporting Act by adding inaccurate alerts to their credit files. *Id.* at 2208–10. For most class members, the affected credit files were not disclosed to third parties during the relevant period. *Id.* at 2200. The plaintiffs, nonetheless, sought to proceed on a class-wide basis, arguing that all class members suffered a concrete injury because the "misleading [] alerts in their internal credit files exposed them to a *material risk* that the information would be disseminated in the future." *Id.* at 2210 (emphasis added). The Supreme Court held, plaintiffs do not have standing to assert a claim for damages based on future harm unless "the risk of future harm materializes and the individual suffers a concrete harm." *Id.* at 2211. Because the majority of class members "did not demonstrate that the risk of future harm materialized"—*i.e.*, that their credit files "were ever provided to third parties or caused a denial of credit"—they lacked standing to pursue their claims. *Id.*

Similarly, the Eighth Circuit Court – in applying *Transunion* to a data breach class action – held, where plaintiffs' data "was stolen by hackers," the risk of future injury was insufficient to constitute an injury in fact for standing purposes absent allegations the data "was misused." *SuperValu II*, 870 F.3d at 770-71 (dismissing claims of all but one of the 16 plaintiffs for lack of standing).[1] In *SuperValu II*, the plaintiffs alleged hackers installed malware on defendant's system to successfully "harvest" consumer credit card information, resulting in at least one instance of fraud. *SuperValu II*, 870 F.3d at 769. The plaintiffs then cited a U.S. Government Accountability

---

[1] Although the court in *SuperValu II* found that one of the 16 plaintiffs had plausibly alleged standing because he alleged that he had suffered a fraudulent charge on his credit card resulting from defendant's data breach the remaining members had no viable standing argument. *See, SuperValu II*, 870 F.3d at 771-74. That case involved an actual data breach *and* allegations that plaintiffs' "[c]ard information was stolen by hackers" because of that breach." *Id.* at 770.

Office ("GAO") report, arguing the theft of their card information created a substantial risk that they too will suffer identity theft and fraud in the future. *Id.* at 770. The Eighth Circuit rejected the plaintiffs' argument, reasoning, while the information was stolen and "could be used to commit credit or debit card fraud…most breaches have not resulted in detected incidents of identity theft." *Id.* at 770–71. To that end, the court dismissed the claims of 15 of the 16 plaintiffs (one plaintiff alleged a separate present injury), as the 15 plaintiffs failed to "plausibly demonstrate that the risk . . . [of] future identity theft is substantial." *Id.* at 770. To be clear, the Eighth Circuit *assumed* that the cyber criminals stole plaintiffs' credit card information during the hack. However, as there had been no allegations of actual identity theft, the Court held the threat of future harm was not enough to establish standing, finding, "the Complaint has not sufficiently alleged a substantial risk of identity theft, and plaintiff's allegations of future injury do not support standing in this case." *Id.* at 771-72.

Again, in *Braitberg v. Charter Commc'ns, Inc.*, the Eighth Circuit found a plaintiff lacked Article III standing as he had "not alleged an injury in fact as required by Article III" where "[h]e does not allege that Charter has disclosed the information to a third party, that any outside party has accessed the data, or that Charter has used the information in any way during the disputed period. He identifies no material risk of harm from the retention; a speculative or hypothetical risk is insufficient." 836 F.3d 925, 930 (8th Cir. 2016).

Finally, district courts within the Eighth Circuit have followed this reasoning, finding, an increased risk of identity theft, fraud, or misuse of information following an actual, criminal data breach—let alone simply the accessing of information without more — falls short of a sufficiently "imminent" harm establishing standing. *See e.g., George D. v. NCS Pearson, Inc.*, No. 19-2814, 2020 WL 3642325, at *2-3 & n.2 (D. Minn. July 6, 2020). The Western District of Arkansas, in

granting a 12(b)(1) motion to dismiss data breach claims based on a lack of Article III standing, found, "[plaintiffs'] PII was not misused—which, under the precedent in *TransUnion*, means they have no standing to sue." *Wilson v. J.B. Hunt Transp., Inc.*, No. 5:21-CV-5194, 2022 U.S. Dist. LEXIS 243393, at *15 (W.D. Ark. Oct. 6, 2022). In support of its decision, *Wilson* cited a Third Circuit opinion which states, "[i]n data breach cases where no misuse is alleged, [], there has been no injury—indeed, no change in the status quo . . . . Moreover, there is no quantifiable risk of damage in the future. Any damages that may occur here are entirely speculative and dependent on the skill and intent of the hacker." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 45 (3rd Cir. 2011).

Here, Plaintiff has alleged that she and the putative Class Members face substantial *risk* of being targeted by cybercriminal in the future – who could "commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund." (ECF No. 2 ¶¶ 82). As stated by the Eighth Circuit, "*possible* future injury is insufficient." *City of Kennett v. EPA,* 887 F.3d 424, 431 (8th Cir. 2018) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013))(emphasis in original). Just like the plaintiffs in the cases cited above, Plaintiff fails to allege that any alleged risk of future harm *has* materialized or *will ever* materialize in a requisite imminent fashion which is traceable to the data held by RFM. Accordingly, Plaintiff lacks Article III standing and Plaintiff's Complaint should be dismissed in its entirety.

**1.     Plaintiff Cannot Rely On Lost Time And Any Expenditures Mitigating The Alleged Security Event To Show An Injury In Fact Sufficient To Confirm Article III Standing When There Is No Substantial Imminent Risk Of Harm.**

In the absence of a plausible imminent or impending injury, Luebke seeks to establish an injury in fact by relying extensively on alleged anxiety and out of pocket expenses associated with her fear of future harm. These allegations are too attenuated to confer standing as they are again dependent upon events occurring in the future or her fear that events may occur in the future.

However, as the U.S. Supreme Cort has noted, a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); *See also Auer v. Trans Union, Ltd. Liab. Co.*, 902 F.3d 873, 878 (8th Cir. 2018)(finding, plaintiff's allegation that "she lost time 'trying to prevent further violations…'" was insufficient to establish standing). Hence, "in data breach cases, courts consistently hold that the cost to mitigate the risk of future harm does not constitute an injury in fact unless the future harm being mitigated against is itself imminent." *Duqum*, 2016 WL 3683001, at *6 (citation omitted). This is settled law in this and other Circuits. *See SuperValu II*, 870 F.3d at 771; *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1344 (11th Cir. 2021); *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017). The reasoning behind this decision is well-articulated by the Fourth Circuit in *Beck*:

> [F]or the Plaintiffs to suffer the harm of identity theft that they fear, we must engage with the same 'attenuated chain of possibilities' rejected by the [Supreme] Court in *Clapper*. 133 S. Ct. at 1147-48. In both cases, we must assume that the thief targeted the stolen items for the personal information they contained…the thieves must then select, from thousands of others, the personal information of the named plaintiffs and attempt successfully to use that information to steal their identities. This "attenuated chain" cannot confer standing.

*Id.* at 275.

Importantly, the Eighth Circuit – in *SuperValu II* – noted that there is a connection between whether Plaintiff has alleged a substantial and imminent risk of harm and whether time spent addressing and mitigating the feared harm can confer Article III standing. The court explained that because the plaintiffs "had not alleged a substantial risk of future identity theft, <u>the time they spent protecting themselves against this speculative threat cannot create an injury</u>"—"self-imposed harms cannot confer standing." *SuperValu II*, 870 F.3d at 771. (emphasis added)( citation omitted). The Supreme Court went further and outlined the concern of "manufactured standing" by "an enterprising plaintiff . . . to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear." *Clapper*, 568 U.S. at 416. Accordingly, because there is no imminent and substantial risk of future harm alleged, Plaintiff's alleged injuries and expenses stemming from her fear of future harm are insufficient to establish Article III standing.

### 2.   Plaintiff's Alleged Anxiety And Emotional Damages Caused By Her Fear Of Harm Are Too Attenuated To Establish Standing.

Likewise, Plaintiff's claims for non-economic damages or emotional injury stemming from a fear of future harm are insufficient to establish standing absent an imminent or substantial risk of future harm. *See e.g. Beck v. McDonald, 848 F.3d 262, 273 (4th Cir. 2017)(*"the plaintiff's 'conclusory allegations' that he was 'torn . . . all to pieces' by the unauthorized disclosure of his social security number [does not] support [] the proposition that bare assertions of emotional injury are sufficient to confer Article III standing."). Moreover, "courts have held that loss of privacy and breach of confidentiality are too abstract to establish Article III standing" following a data incident. *See Duqum*, 2016 WL 3683001, at *8; *see also Darnell*, 2021 WL 1124792, at *5 (noting plaintiff "has not provided any" law holding that "mere compromise" of [PHI] and resulting loss of privacy satisfies Article III). Thus, to allege a concrete injury on this theory, Plaintiffs must allege "facts demonstrating that they suffered . . . damages or injury due to a loss of privacy."

*Duqum*, 2016 WL 3683001, at *8; *see also SuperValu I*, 2016 WL 81792, at *8 (finding plaintiffs lacked standing where they "have not alleged facts showing that the loss of privacy and confidentiality resulted in a concrete injury"). Accordingly, Plaintiff's unsupported allegations that she and the Class Members have suffered "anxiety, emotional distress, loss of privacy, and other…non-economic losses," (ECF No. 2, ¶ 19, 123) do not give rise to Article III standing.

Such abstract, conclusory harms devoid of factual underpinning do not establish standing. Accordingly, Plaintiff has failed to satisfy the requirements for Article III standing and this matter must be dismissed in its entirety pursuant to Fed. R. Civ. P. Rule 12(b)(1).

### 3. Plaintiff's Alleged Diminution In The Value Of PHI / PII Is Insufficient To Establish An Injury In Fact.

Luebke alleges that she suffered an actual injury in the form of diminution in the value of her PHI, which she coins as "intangible property". (ECF No. 2, ¶¶ 18). In support of this claim, Luebke alleges that "PII is a valuable commodity" on the "cyber black market," and references, "[t]he high value of PII to criminals." (*Id.* at ¶ 77, 78). Luebke provides additional unsupported estimates of the "black market" value different types of personal information, alleging, "personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200. Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web." (*Id.* at ¶ 78).

Notably, the instant cybersecurity event did not implicate Plaintiff's credit or debit card information, or her bank details. (ECF No. 2-1). Moreover, Luebke's estimate of the black market value of personal information generally does nothing to save her claim, as she does not claim that the alleged decrease in black-market value of her PHI somehow harmed her – meaning Luebke fails to allege she attempted to sell her information and obtained a lower price due to the claimed data breach.

Many courts have rejected the argument that a plaintiff may be entitled to damages caused by the alleged 'diminution of value of PHI' because PHI does not have a cognizable monetary value for its owner and Plaintiffs offer no factual allegation to support such a theory. In rejecting a similar argument that a plaintiff had "a concrete injury in the loss of their private information, which they characterize as an intangible commodity," the Seventh Circuit "refrain[ed] from supporting standing on such an abstract injury, particularly since the complaint does not suggest that the plaintiffs could sell their personal information for value." *Remijas v. Neiman Marcus Grp.*, LLC, 794 F.3d 688, 695 (7th Cir. 2015). Likewise, Luebke has failed to suggest that she could – or intended to – somehow obtain the black-market value for her own personal information. Accordingly, any alleged diminution in the value of that information is not a concrete injury to her.

Federal courts around the country have found the alleged diminution of value of PHI (or PII) cannot support Article III standing. *See, e.g.*, *In re Cmty. Health Sys.*, No. 15-CV-222-KOB, 2016 U.S. Dist. LEXIS 123030, at *31 (N.D. Ala. Sep. 12, 2016) ("This court joins those courts in rejecting the loss of intrinsic value theory to establish standing."); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533–34 (D. Md. 2016) (finding allegations of diminished value of personal information insufficient to establish standing); *accord Sci. Applications Int'l.*, 45 F. Supp. 3d at 30 (same); *See also, Low v. LinkedIn Corp.*, 2011 WL 5509848, at *4 (N.D. Cal. Nov. 11, 2011) (finding allegation that personal information had an independent economic value "too abstract and hypothetical to support Article III standing"); *Willingham v. Glob. Payments, Inc*., No. 1:12-CV-01157-RWS, 2013 WL 440702, at *7 (N.D. Ga. Feb. 5, 2013) ("Plaintiffs' PII does not have an inherent monetary value."); *In re JetBlue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005).  Determinative to the issue here is that Eighth Circuit courts analyzing

16

Article III standing in data incident cases have conspicuously omitted diminution of value of PII as a distinct, concrete harm when discussing what could constitute harm in the absence of traditional concrete harm. *See generally, In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 973–76 (8th Cir. 2018); *SuperValu II*, 870 F.3d at 768–72.

Even if one were to assume that Luebke's PHI had an independent or inherent value, her failure to allege that any diminution in the value of her PHI resulted in harm to her is fatal to her claim to standing. Put another way, simply stating that your PHI or PII has value does not establish that you have suffered a concrete harm absent something more. Further, because the Eighth Circuit has specifically rejected other forms of anticipated and amorphous harms, there is no reason to believe that alleging some theoretical devaluing of PHI would be recognized as concrete harm to support standing. Accordingly, the alleged diminution in the value of personal information standing alone is not enough to confer Article III standing in this case. Dismissal under 12(b)(1) is warranted.

    **C.    Plaintiff Fails To State Any Viable Cause Of Action Arising Out The Alleged Data Security Incident And All Counts Must Be Dismissed Pursuant To Fed. R. Civ. P 12(b)(6).**

Even had Plaintiff alleged sufficient facts to support and injury in fact necessary to establish standing, all causes of action set forth in her Complaint should be dismissed for failure to state a claim. Initially, similar to the standing arguments, but to the required element of damages, Plaintiff has not pled and cannot plead a cognizable theory of harm that would satisfy the damages element of any of the causes of action asserted. Further, all of the causes of action are insufficient on other grounds as Plaintiff has not pled and cannot plead facts to establish the required elements of each cause and dismissal pursuant to Rule 12(b)6) is required.

1. **Plaintiff Fails To State A Claim For Negligence.**

Under Arkansas law, "[t]o establish a prima facie case of negligence, a plaintiff must show that damages were sustained, that the defendant breached the standard of care, and that the defendant's actions were the proximate cause of the damages." *Union Pac. R.R. v. Sharp*, 330 Ark. 174, 180, 952 S.W.2d 658, 661 (1997). *Ficek v. Morken*, 2004 ND 158, ¶ 9, 685 N.W.2d 98, 100-101 (2004). Plaintiff has not pled facts to establish multiple elements.

a. *Plaintiff has not alleged that she suffered actual damages*.

As detailed above in RFM's argument in support of motion to dismiss pursuant to 12(b)(1) related to standing, Plaintiff has not alleged any cognizable injury which resulted from RFM's conduct. Plaintiff simply alleges she anticipates harm in the future, and as a result of that fear, she undertook expenses related to the prevention of future harm. Accordingly, she is unable to establish the first element of her negligence claim – that she suffered damages.

b. *There is no common law duty to safeguard personal information.*

While the matter has not yet been discussed by Arkansas Supreme Court or the Eighth Circuit interpreting Arkansas law, federal courts within this Circuit and around the country have refused to recognize a broad common law duty to safeguard personal information. *In re SuperValu Inc. Customer Data Sec. Breach Litig.*, No. 14–MD–2586 ADM/TNL, 2018 WL 1189327, at *14 (D. Minn. Mar. 7, 2018) ("*SuperValu III*") (declining to impose a common law duty to safeguard personal information), *aff'd* 925 F.3d 955 (8th Cir. 2019); *See, e.g.*, *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 816 (7th Cir. 2018); *McConnell v. Dep't of Lab.*, 814 S.E.2d 790, 798 (Ga. Ct. App. 2018) (finding no "general duty to safeguard personal information"), *aff'd*, 828 S.E.2d 352 (Ga. 2019); *Perdue*, 455 F. Supp. 3d at 762; *Cooney*, 943 N.E.2d at 28–29 (rejecting invitation by employee plaintiffs to recognize a new common law duty to protect

employee data). Absent such a duty, RFM cannot be held liable for a third party's calculated efforts to gain unauthorized access to its system.

Defendant acknowledges that the *Rodriguez* opinion draws a different conclusion. *See Rodriguez*, 2023 U.S. Dist. LEXIS 196396.  In *Rodriguez,* the Court recognized an absence of controlling law, explaining, "[t]he parties have not cited, and the Court has not found, an Arkansas case on point with the facts of this case." *Id.*, at *10. Therefore, the Court was left to, "do [its] best to predict how the Arkansas Supreme Court would rule in the circumstances." *Id.* In so doing, the Court primarily relied on the Arkansas Supreme Court decision in *Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349 (Ark. 1997), for the proposition that the establishment of a legal duty hinges almost exclusively on the issue of foreseeability of the harm. However, in *Shannon*, the Arkansas Supreme Court's decision to expand common-law liability to include a newly-recognized duty (dramshop liability on the part of liquor vendors) was supported by the overwhelming majority opinion of courts from around the country. *Shannon v. Wilson,* 329 Ark. At 153, 947 S.W.2d at 354. Specifically, the *Shannon* opinion cites over 30 opinions from other jurisdictions and 6 statutes from other states recognizing dramshop liability.

In contrast, here, there is no established nationwide majority of cases recognizing a common law duty on the part of healthcare providers to safeguard information. On the contrary, the Court in *Rodriguez* points to only four opinions establishing such a duty in other jurisdictions – three of which are within the Eleventh Circuit. Moreover, the Arkansas Supreme Court – as the highest court of the state – was in full authority to establish a new duty in *Shannon*. In contrast, the federal district court is without such authority and must be cautious not to usurp the role of the state courts by recognizing a common law duty and expanding state law liability absent the state court's acknowledgement of the same. *Ashley Cty. v. Pfizer*, 552 F.3d 659, 673 (8th Cir. 2009)("It

is not the role of a federal court to expand state law in ways not foreshadowed by state precedent,"). In light of the absence of any opinions foreshadowing that the Arkansas Supreme Court would establish a new duty, and an absence of an overwhelming majority of cases from jurisdictions across the nation similar to that in *Shannon*, it is not the role of the federal courts to recognize a new and expanded duty. As stated in *Tucker v. Paxson Mach. Co.,* the possibility that a state court *may* follow a trend established by other states' laws is insufficient to authorize a federal court to expand liability under state law. *See Tucker v. Paxson Mach. Co.*, 645 F.2d 620, 625 (8th Cir. 1981) ("Although Missouri may follow the trend of recent cases in extending [liability], the [] theory espoused by appellant is not well established and, therefore, the district court properly refused to apply that theory.")

Importantly, the Court in *Rodriguez* also recognized – but declined to follow – the reasoning of the Eighth Circuit in *SuperValu II.* In *Supervalu II*, where the supreme court of the underlying state (Illinois) had not yet established a common law duty for the defendant to protect its customers PII, the Eighth Circuit declined to establish such a duty. Other opinions issued by the Eighth and other Circuit Courts have, similarly, cautioned federal courts not to expand liability under state law absent a "well-established trend" in state law supporting the decision. *See e.g., Trimble v. Asarco, Inc.*, 232 F.3d 946, 963 (8th Cir. 2000)(refusing to "expand substantive liability under Nebraska law," as to do so absent established state law, "would be both imprudent and improper."); *Birchler v. Gehl Co.*, 88 F.3d 518, 521 (7th Cir. 1996) ("When we are faced with opposing plausible interpretations of state law, we generally choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability."); *Pearson v. John Hancock Mut. Life Ins. Co.*, 979 F.2d 254, 259 (1st Cir. 1992) (explaining, parties raising state law claims in federal court, "cannot justifiably complain if the

20

federal court manifests great caution in blazing new state-law trails"); *Villegas v. Princeton Farms, Inc.*, 893 F.2d 919, 925 (7th Cir. 1990) ("federal court is not the place to press innovative theories of state law").

It is Defendant's position that, *SuperValu II*, and established Eighth Circuit case law cautioning federal courts not to expand state law absent well-established case law supporting such a finding should govern this Court's decision.  Arkansas courts are loathe to generally expand common-law duties in the absence of national or local consensus and the "local" trend as set forth in *Super Valu II* is to not recognize the duty alleged by Plaintiff.  As such, Defendant respectfully requests that this Court decline to expand Arkansas to recognize a new common law duty and dismiss Plaintiff's negligence claim.

### D.      Plaintiff Has Not Alleged Sufficient Facts Establishing That RFM Breached The Standard Of Care, As RFM Had No Duty To Protect Against The Unforeseen Criminal Acts Of Third Parties.

Plaintiff is also unable to establish that RFM breached a standard of care. Plaintiff alleges, "cybercriminals infiltrated Defendant's," systems and stole Plaintiffs and Class Members' personal information (ECF No. 2 ¶¶ 2). "It is a general principle that a party is not liable in tort for harm resulting from the criminal acts of a third party absent certain special relationships." *Park Plaza Mall CMBS, LLC v. Powell*, 2018 Ark. App. 48, *6 (Ct. App.)(citing *First Commercial Tr. Co. v. Lorcin Eng'g*, 321 Ark. 210, 214-15, 900 S.W.2d 202, 204 (1995). "One such special relationship is that of a business invitee, and a business may be held liable for foreseeable criminal acts committed against its patrons by third parties." *Id.* at *7. The Arkansas Supreme Court, in *Boren*, identified three tests for determining whether a business may be held liable for the criminal acts of a third party: (1) the Specific Harm Test, (2) the Prior Similar Incidents Test, and (3) the Totality of the Circumstances Test. *Boren v. Worthen Nat'l Bank*, 324 Ark. 416, 425, 921 S.W.2d 934, 940

(1996). "In all three tests, the foreseeability of the criminal act is a crucial element in determining whether a duty is owed." *Id.* at 425.

Here, Plaintiff has alleged no facts supporting the proposition that RFM should be held liable for the unforeseeable criminal acts of third parties. Under the Specific Harm Test, Plaintiff would need to show that RFM, "kn[ew] or ha[d] reason to know that acts [we]re occurring or about to occur on the premises that pose imminent probability of harm to an invitee." *Id.* at 426. According to the notice attached to Plaintiff's Complaint, a third party may have gained access to RFM's network between June 8, 2023, and June 26, 2023;  RFM did not discover that the third party may have gained unauthorized access to its network until several days after the fact; RFM was first made aware of the possibility of an attack when RFM experienced an outage on June 26, 2023; and RFM only confirmed the existence of the attack following an investigation thereafter. (ECF No. 2-1). Given that RFM had no prior or contemporaneous notice that this third party would commit a criminal act by gaining calculated unauthorized access to its systems, the Specific Harm Test for liability is not met.

The Prior Similar Incidents Test requires a court to consider whether foreseeability can be implied based on the existence of prior similar incidents of third-party criminal activity. *Id.* "The similarity, frequency, location, and proximity in time of the prior incidents are the key elements to be considered." *Id.* The Court in *Boren* recognized that one or two prior incidents would not suffice, but that, "courts that have employed this approach have required that the prior similar incidents be more numerous." *Id.* (internal citations omitted). Plaintiff has not identified a single prior incident of third parties gaining unauthorized access to RFM's system. Accordingly, this test for liability is not met.

Finally, the *Boren* court rejected the third test created by the lower courts - the Totality of the Circumstances Test. *Id* at 428. The Court reasoned, "we decline to adopt this approach, as have the majority of jurisdictions that have considered this issue. To do so would result in the imposition of a duty to guard against random criminal acts by third parties, a duty we have heretofore not imposed on any other businesses." *Id.* The Court warned, to impose such liability would "shift responsibility for [] non-foreseeable, third party criminal conduct from the government to the private sector." *Id.* In sum, the allegations of Plaintiff's Complaint do not provide any basis upon which RFM should be excepted from the general rule that a party is not liable in tort for harm resulting from the criminal acts of a third party. Accordingly, the negligence claim must be dismissed.

###### E.    Plaintiff's Claims Do Not Stem From The Duties Created By The Special Relationship Between RFM And Its Patients.

In an effort to hold RFM liable for the conduct of third-party criminal actors, Plaintiff alleges RFM had a duty arising from its "special relationship" with Plaintiff and the putative class members. Indeed, hospitals and other medical centers owe patients a special duty, which has been defined the Arkansas Supreme Court as, "the duty … to give [plaintiff] reasonable care and attention and to have that knowledge of the necessities of her case which would result from such care and attention and from the possession of ordinary skill in her treatment. In other words, it was the duty of the hospital to see that the patient had such attention as her condition apparently made necessary." *Dollins v. Hartford Acci. & Indem. Co.*, 252 Ark. 13, 18, 477 S.W.2d 179, 182-83 (1972). Notably, the 'special relationship' between RFM and its patients gives rise to legal duties related to the care of its patients and does not extend to the protection against third party criminal actors taking action after treatment has been provided. Accordingly, this allegation by Plaintiff does not support a negligence claim under Arkansas law.

**F.** **Plaintiff Cannot Rely On The Theory Of *Res Ipsa Loquitor* To Remedy The Deficiencies In Her Negligence Claim.**

In attempt to remedy the speculative nature of her allegations of RFM's negligence and her own damages, Plaintiff alleges, "Representative Plaintiff and Class Members remain in the dark regarding what data was stolen, the particular malware used, and what steps are being taken to secure their PII in the future. Thus, Representative Plaintiff and Class Members are left to speculate as to where their PII ended up, who has used it, and for what potentially nefarious purposes." (ECF No. 2 ¶¶ 48).   Generally, "[t]he fact that an accident occurred is not evidence of negligence, and Plaintiff 'cannot rely on inference based on conjecture to establish a claim of negligence.'" *Zmuda v. Books-A-Million, Inc.*, No. 6:13-CV-6072, 2014 U.S. Dist. LEXIS 66259, at *5 (W.D. Ark. May 14, 2014)(quoting  *Schubert v. Target Stores, Inc.,* 2010 Ark. 466, at 3-4, 369 S.W.3d 717, 719 (Ark. 2010)). Under certain circumstances, a plaintiff may rely on the theory of *res ipsa loquitor* to establish a negligence claim "where the evidence of the true cause is available to the defendant but not to the plaintiff." *Schubert v. Target Stores, Inc.*, 2010 Ark. 466, ¶ 6, 369 S.W.3d 717, 720. (internal citations omitted). "[T]his presumption is limited to situations where the defendant's negligence has been substantially proven." *Schubert v. Target Stores, Inc.*, 2010 Ark. 466, ¶ 7, 369 S.W.3d 717, 721.

Nonetheless, *res ipsa loquitur* applies only where the Plaintiff's injuries are caused by "an instrumentality in the exclusive control of a defendant." *Schubert v. Target Stores, Inc.*, 2010 Ark. 466, ¶ 6, 369 S.W.3d 717, 720. (internal citation omitted). This theory is not applicable where – as here – Plaintiff's claims stem from the criminal acts of a third party who was not within RFM's control. The Supreme Court of Arkansas has held, "we will not apply the doctrine unless the event is the kind which ordinarily does not occur in the absence of negligence, and all other responsible causes, such as the conduct of the plaintiff or third persons are sufficiently eliminated." *Gann v.*

*Parker*, 315 Ark. 107, 112, 865 S.W.2d 282, 284 (1993)(*citing Coca - Cola Bottling Co. v. Hicks*, 215 Ark. 803, 223 S.W.2d 762 (1949)); (see also *Barker v. Clark*, 343 Ark. 8, 14-15, 33 S.W.3d 476, 481 (2000) (Courts should "not apply the doctrine of *res ipsa loquitur* when all other responsible causes, such as the conduct of the plaintiff or third persons, are not sufficiently eliminated.")).  Data security events routinely occur in the absence of negligence.

Accordingly, Plaintiff's negligence claims – which stem from the criminal act of a third party outside of RFM's exclusive control precludes the application of the *res ipsa loquitur* doctrine and Plaintiff must – therefore – cannot rely on inference based conjecture to establish her claim and must state a prima facie case of negligence in order for her claim to survive dismissal. Because Plaintiff has failed to state sufficient facts establishing her claim, it must be dismissed.

1. **Plaintiff Cannot Establish A Claim For Negligence Per Se Based On An Alleged Violation Of The Federal Trade Commission Act (FTCA).**

Count Two of Plaintiff's Complaint attempts to assert a claim based on the theory of negligence *per se* based on alleged violations of the FTCA, "other federal laws relating to consumers' privacy and security," "state law," and the laws of "other states and jurisdictions where victims of the Data Breach are located." (ECF No. 4 ¶¶ 126, 127, 129).  As a threshold matter, Plaintiff's assertion that RFM was negligent *per se* based on unidentified "state law" and the laws of "other states and jurisdictions" generally is unduly vague and fails to state a claim. Moreover, even if Plaintiff could establish that RFM violated state or federal law, Plaintiff's claim must fail, as the Arkansas Supreme Court "ha[s] held, on several occasions, that a law violation does not constitute negligence per se, but is only evidence of negligence." *Young v. Dodson*, 239 Ark. 143, 148, 388 S.W.2d 94, 98 (1965); *Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349 (1997)("[u]nder Arkansas law, the violation of a statute is only *evidence of negligence* and does not constitute negligence per se."); *U.S. Bank Nat'l Ass'n ND v. Elender Escrow, Inc.*, No. 4:11CV00123 JMM,

2011 U.S. Dist. LEXIS 134690, at *31 (E.D. Ark. Nov. 21, 2011)(dismissing negligence per se claim based on violation of state statute, "because in Arkansas a violation of the law does not constitute negligence per se, but is only evidence of negligence."); *Loftis v. Credit Acceptance Corp.*, No. 4:10cv00496 BSM, 2011 U.S. Dist. LEXIS 33197, at *15 (E.D. Ark. Mar. 18, 2011)(dismissing negligence per se claim based on violation of federal statute, reasoning, "Arkansas is in the minority of states that takes the view that the violation of a statute is not negligence per se…")(internal citation and quotation marks omitted).

Additionally, to the extent Plaintiff's claim is based on an alleged violation of the FTCA and "other federal laws," Eighth Circuit precedent precludes such a claim. As stated in *Alleruzzo*, a negligence claim may not be, "premised on a duty imposed by federal statute, specifically the Federal Trade Commission Act (FTCA)." *Alleruzzo v. SuperValu, Inc.*, 925 F.3d 955, 963 (8th Cir. 2019). In so holding, the Court reasoned, "The FTCA gives the Federal Trade Commission the authority to, among other things, enforce against "'unfair or deceptive acts or practices in or affecting commerce.'" *Id.* (quoting *FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015); 15 U.S.C. § 45(a)). While "[t]he Commission has used this authority to bring a number of enforcement actions against companies that have purportedly failed to protect consumer financial data against hackers …[t]he FTCA creates no private right of action." *Id.* (citing *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 240 (3d Cir. 2015)). Accordingly, Plaintiff's claim for negligence *per se* based on alleged statutory violations should be dismissed as Arkansas law does not recognize such a claim.

**2.      Arkansas Law Does Not Recognize A Cause Of Action For Breach Of Confidence.**

Plaintiff alleges, Defendant "received, in confidence, Representative Plaintiff's and Class Members' PII with the understanding that the PII would not be accessed by, acquired by,

appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by the public or any unauthorized third parties." (ECF No. 4 ¶¶ 138). This claim should be dismissed, as Arkansas courts have not recognized a cause of action for a "breach of confidence," at all – much less in the context of a data breach action. *See Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 U.S. Dist. LEXIS 145000, at *31-32 (E.D. Mo. Aug. 3, 2021)(dismissing claim for "breach of confidence due to [defendant]'s failure to adequately protect [plaintiff's] PII," as "Missouri courts have only recognized the validity of this claim in the trade secret context."). While district courts in other circuits have recognized a breach of confidence claim in the data breach context, those claims arose from existing common law causes of action created by the underlying state's courts. *See e.g. Stephens v. Availity,* No. 5:19-cv-236-Oc-30PRL, 2019 U.S. Dist. LEXIS 239572, at *18 (M.D. Fla. Oct. 1, 2019)(recognizing, the existing breach of confidence cause of action derived from Florida common law may be extended to data breach actions.). Nonetheless, Arkansas courts have not recognized a breach of confidence claim, and it is not within the authority of this court to create one. *Ashley Cty. v. Pfizer*, 552 F.3d 659, 673 (8th Cir. 2009)("it is not the role of a federal court to expand state law in ways not foreshadowed by state precedent…")(quoting *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 426 (3d Cir. 2002)). Accordingly, Plaintiff's breach of confidence claim should be dismissed.

### 3.   Plaintiff Fails To Allege Facts Sufficient To Sustain A Claim For Breach Of Implied Contract.

"Under Arkansas law, implied contracts are inferred from the acts of the parties. Thus, they can be proven by circumstances showing the parties intended to contract or by circumstances showing the general course of dealing between the parties." *Air Evac EMS, Inc. v. USAble Mut. Ins. Co.*, 931 F.3d 647, 654 (8th Cir. 2019). "The elements of an implied contract, however, are the same as an express contract." *Id.* These elements include, "(a) competent parties; (b) subject

27

matter; (c) legal consideration; (d) mutual agreement; (e) mutual obligations." *Berry v. Cherokee Village Sewer, Inc.*, 85 Ark. App. 357, 155 S.W.3d 35, 38 (Ark. Ct. App. 2004). Moreover, "an indispensable element of any contract, express or implied, is a promise." *K.C. Props. of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 28, 280 S.W.3d 1, 13 (2008).

Here, Luebke points to no objective conduct by RFM evidencing a contractual promise to secure her data. Instead, she alleges, "Plaintiff and Class Members provided and entrusted their PII to Defendant. In so doing, Representative Plaintiff and Class Members entered into implied contracts with Defendant…" (ECF No. 4 ¶¶ 148). Undoubtedly, Plaintiff's conduct in providing her information to RFM for the purpose of receiving medical care is not the relevant inquiry. *See, e.g.*, *SuperValu II*, 870 F.3d at 771 n.6 (finding plaintiffs did not become parties to an implied contract to protect PII simply by giving defendant their payment information); *Longenecker-Wells v. Benecard Servs.*, 658 F. App'x 659, 662 (3d Cir. 2016)(where "[defendant] required Plaintiffs' personal information as a prerequisite to employment[,] [t]his requirement alone did not create a contractual promise to safeguard that information, especially from third party hackers."); *Cmty. Bank of Trenton*, No. 15-cv- 01125-MJR, 2017 WL 1551330, at *5 (S.D. Ill. May 1, 2017) (finding "implicit promise" of data security insufficient to support implied contract claim), *aff'd*, 887 F.3d 803 (7th Cir. 2018).  Plaintiff's failure to point to RFM's action is fatal to her claim.

Plaintiff has also failed to allege sufficient facts establishing consideration for the alleged implied contract. "Consideration is any benefit conferred or agreed to be conferred upon the promisor to which he is not lawfully entitled, or any prejudice suffered or agreed to be suffered by the promisor, other than such as he is lawfully bound to suffer." *Worden v. Crow*, 2013 Ark. App. 234, ¶ 6, 427 S.W.3d 143, 147 (Ct. App.).

Indeed, the parties entered into a bargained-for-exchange whereby Plaintiff (or her insurer) paid RFM a sum of money, and in exchange, RFM provided Plaintiff with medical care. Plaintiff alleges that – by providing her information to RFM – the parties entered into another agreement, under which RFM had separate obligations regarding the safeguarding of Plaintiff's PHI and PII. Notably, "[u]nder Arkansas law, there must be additional consideration when the parties to a contract enter into an additional contract." *Go v. Crossett Health Found.*, 2012 Ark. App. 83, ¶¶ 6-7, 389 S.W.3d 28, 31-32 (Ct. App.). "Although mutual promises may be adequate consideration to uphold a contract, the promise must have value to the party agreeing to the change; if no benefit is received by the obligee except what he was entitled to under the original contract, and the other party to the contract parts with nothing except what he was already bound for, there is no consideration for the additional contract." *Id.*

Despite Plaintiff's allegations that her PHI and PII is of "high value to criminals" on the black market, we have explained that such information is of no value to Plaintiff, herself, nor to RFM. Accordingly, RFM received no added benefit in exchange for the obligation Plaintiff is now asking this Court to impress upon it. Accordingly, Plaintiff has failed to allege facts showing consideration, and therefore, no implied contract existed.

Defendant recognizes the Court in *Rodriguez* came to a different conclusion. In so doing, the Court rejected the argument that separate consideration was needed to create an implied contract regarding the safeguarding of patient information, explaining, it simply "does not see a reason to distinguish between" consideration paid for services and that paid for data protection. *Rodriguez*, 2023 U.S. Dist. LEXIS 196396, at *22. While it is unclear *why* the Court refused to recognize such a distinction, Defendant notes two important differences between the allegations set forth in the instant complaint and those asserted in *Rodriguez*. First, in *Rodriguez*, the plaintiff

alleged that there was an express promise to safeguard the plaintiff's information. *Id.* at \*23. (plaintiff "allege[d] that '[i]n its Privacy Policy, Mena represented that it had a legal duty to protect Plaintiffs' and Class Members' [PII].'"). In contrast, here, Plaintiff has not alleged any facts indicating RFM made such a promise, or that the parties ever discussed or contemplated the issue of data security prior to the subject incident. Moreover, in the instant complaint, Plaintiff specifically alleges, RFM owed her an, "'independent dut[y],' untethered to any contract between Defendant, Representative Plaintiffs, and/or the remaining Class Members." (ECF No. 2 ¶¶ 109). Accordingly, the alleged implied contractual agreement between RFM and Plaintiff regarding the safeguarding of Plaintiff's PII must be supported by independent consideration. Absent allegations establishing consideration giving rise to an implied contract, or establishing that RFM made a promise to Plaintiff regarding the safeguarding of her PII, Plaintiff cannot establish the existence – much less the breach of – an implied contract and her claim should be dismissed.

### 4.    Plaintiff's Breach Of The Implied Covenant Of Good Faith And Fair Dealing Should Be Dismissed.

It is well-settled that a "breach of the implied covenant of good faith and fair dealing [does not] provide[] a cause of action in Arkansas separate and apart from a breach of contract." *Ark. Research Med. Testing v. Osborne*, 2011 Ark. 158, 2011 Ark. LEXIS 147 (2011). Plaintiff has not asserted a breach of contract claim, nor has she alleged sufficient facts establishing that any such contract exists. Accordingly, her claim should be dismissed.

Moreover, even if Plaintiff's claim were tethered to a breach of contract claim, she cannot establish that RFM acted in bad faith – or sinister motive – and her claim must fail. *See GWG DLP Funding V, LLC v. PHL Variable Ins. Co.*, 54 F.4th 1029, 1035 (8th Cir. 2022)("Absent allegations and evidence of a dishonest purpose or sinister motive, a claim for breach of the implied covenant of good faith and fair dealing is legally insufficient."). Plaintiff's allegations do not establish that

RFM acted in bad faith. On the contrary, Plaintiff alleges Defendant acted negligently, and only discovered the subject data breach *after* it occurred. The breach itself does not establish bad faith or intentional conduct on behalf of RFM, but simply recounts an infiltration carried out by third party cybercriminals against the will of RFM.  Accordingly, this claim must be dismissed.

      **5.**      **Plaintiff's Breach Of Fiduciary Duty Claim Should Be Dismissed As Arkansas Law Does Not Recognize A Fiduciary Duty Between A <u>Medical Center And Its Patients.</u>**

"Breach of fiduciary duty involves betrayal of a trust and benefit by [a] dominant party at the expense of one under his influence." *City of Prescott v. Sw. Elec. Power Co.*, 438 F. Supp. 3d 943, 953 (W.D. Ark. 2020) (quoting *LasikPlus Murphy, M.D., P.A. v. LCA-Vision, Inc.*, 776 F. Supp. 2d 886, 905 (E.D. Ark. 2011)(alteration in original). However, "before there can be a breach of a fiduciary duty, a fiduciary relationship must exist." *Id, (quoting W. Memphis Adolescent Residential, LLC v. Compton*, 2010 Ark. App. 450, 8, 374 S.W.3d 922, 927 (2010)). Moreover, "[t]he party claiming the existence of a fiduciary or confidential relationship has the burden of establishing the facts supporting such a relationship." *Id.* at 953.

The Arkansas courts have not recognized a fiduciary relationship between a healthcare provider and a patient. Moreover, the Arkansas Court of Appeals affirmed a lower court finding that no such fiduciary duty existed. *See Henry v. QHG of Springdale, Inc.*, 2010 Ark. App. 847, ¶ 6, 378 S.W.3d 803, 806 (Ct. App.); *see also Rodriguez v. Mena Hosp. Comm'n*, No. 2:23-cv-20020F1, 2023 U.S. Dist. LEXIS 196396, at *27 (W.D. Ark. Nov. 1, 2023)(predicting, "the Arkansas Supreme Court would not recognize a fiduciary relationship between a healthcare system and its patients."). In the absence of state law establishing such a duty, "it is not the role of a federal court to expand state law in ways not foreshadowed by state precedent," *Ashley Cty. v. Pfizer*, 552 F.3d 659, 673 (8th Cir. 2009)(quoting *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415,

426 (3d Cir. 2002)). Federal courts may not expand state laws to "create a fiduciary duty that [state law] has yet to recognize." *In re Grp. Health Plan Litig.*, No. 23-cv-267 (JWB/DJF), 2023 U.S. Dist. LEXIS 227218, at *13 (D. Minn. Dec. 21, 2023)(rejecting plaintiff's argument that medical provider had a fiduciary duty to keep patients' medical information confidential where state law recognized no fiduciary relationship between a health care providers and patients).

In *Rodriguez*, this Court dismissed the plaintiff's breach of fiduciary claim, reasoning,

> The Court predicts the Arkansas Supreme Court would require a [] higher showing to transform the patient-healthcare system relationship into a fiduciary one. …[plaintiff's] allegations [], do not show any special relationship beyond what is typical of patients and healthcare systems. Because of this, the Court believes the analogous precedent about the bank-customer relationship supports its prediction that Arkansas would not recognize a fiduciary relationship here.

*Rodriguez v. Mena Hosp. Comm'n*, 2023 U.S. Dist. LEXIS 196396, at *28-29.

Plaintiff has not alleged – and will not be able to establish – that RFM owed her of any purported Class Members a fiduciary duty, absent any Arkansas state law establishing that such a duty exists. As discussed above, this Court should refrain from recognizing a new duty absent well-established case law supporting its decision. Because Arkansas courts have not recognized a fiduciary relationship between a healthcare provider and patient, this Court should decline to expand state law to do so here. Accordingly, Plaintiff's breach of fiduciary duty claim should be dismissed.

### 6. Plaintiff's Unjust Enrichment Claim Should Be Dismissed Because RFM Did Not Receive Anything Of Value In Exchange For The Protection Of Plaintiff's Personal Information.

"To find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore." *El Paso Prod. Co. v. Blanchard*, 371 Ark. 634, 646, 269 S.W.3d 362, 372 (2007) (citing *Hatchell v. Wren*, 363 Ark. 107, 117, 211 S.W.3d 516, 522 (2005). In other words, "an action based on unjust enrichment is maintainable where a

person *has received money or its equivalent* under such circumstances that, in equity and good conscience, he or she ought not to retain. *Id. (citing Merchants & Planters Bank & Trust Co. v. Massey*, 302 Ark. 421, 790 S.W.2d 889 (1990); *Frigillana v. Frigillana*, 266 Ark. 296, 584 S.W.2d 30 (1979))(emphasis added). As highlighted by this Court in *Rodriguez*, the Eighth Circuit has twice affirmed the dismissal of unjust enrichment claims stemming from data breaches. *See Rodriguez v. Mena Hosp. Comm'n*, No. 2:23-cv-20020F1, 2023 U.S. Dist. LEXIS 196396, at *34 (W.D. Ark. Nov. 1, 2023)(citing *SuperValu II*, 925 F.3d at 966; *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017).  In *Rodriguez*, the court dismissed plaintiff's unjust enrichment claims based on the plaintiff's failure to identify a benefit conferred upon the defendant-hospital in exchange for protection of the plaintiff's PII and PHI.  *See Rodriguez*, 2023 U.S. Dist. LEXIS 196396, at *34.

Plaintiff attempts to establish she conferred a benefit on RFM by (1) paying for her medical services, (2) providing her PII to RFM, and (3) in the form of the damages Plaintiff anticipates that she will sustain as a result of the breach. Each of these arguments must fail.  First, Plaintiff's allegation that she "conferred a monetary benefit to Defendant [when she] purchased goods and services from Defendant." (ECF No. 2 ¶¶ 169) does not support an unjust enrichment claim. The Eighth Circuit has rejected this very theory of liability in *SuperValu II*. In that case, the plaintiff alleged, incorporated in the price he paid for the products sold by defendant was compensation for the expectation of data security protecting the private information he shared with the defendant. The Eighth Circuit rejected that argument as, "common sense counsels against [that] theory of unjust enrichment." *SuperValu II,* 925 F.3d at 966. The Court further explained, "[plaintiff] paid for groceries, the price of which would have been the same whether he paid with cash or a credit card. He did not pay a premium "for a side order of data security and protection." *Id.*.  Accordingly,

this Court should reject plaintiff's argument that, incorporated in her payment for medical services was some unspecified payment for data security which should now be disgorged under the theory of unjust enrichment.

Next, Plaintiff suggests that her PII was of value to RFM, and by providing them with the personal information necessary for RFM to provide care, she conferred on them a monetary benefit. To the extent Plaintiff suggests that RFM was unjustly enriched by receiving Plaintiff's PII itself, that argument is without merit, as Plaintiff's PII and PHI does not constitute *money or its equivalent* and is of no monetary value to RFM. As explained in Defendant's Rule 12(b)(1) argument above, Plaintiff's own PHI or PII is of no monetary value to her, and Plaintiff's allegations that unknown criminals could derive some benefit from selling Plaintiff's PII or PHI on the black market does not remedy this fatal flaw in her alleged claim. Likewise, absent some allegation that RFM could or intended to sell Plaintiff's information on the black market, it derived no monetary benefit from receiving it. The Arkansas Supreme Court has made clear, "a party is not entitled to expectation damages for unjust enrichment." *Hartness v. Nuckles*, 2015 Ark. 444, ¶ 8, 475 S.W.3d 558, 564. Accordingly, Plaintiff's failure to allege that RFM received an *actual* benefit from receiving patients' PHI or PII is fatal to her claim, and her speculative assertions regarding what her information *could* sell for on the black market or its value to a cybercriminal is immaterial absent some allegation that RFM sold and received compensation for the information.

Finally, Plaintiff's allegations regarding alleged future harm also do not save her claim, as recovery under a theory of unjust enrichment is defined by the defendant's gain or benefit, and <u>not</u> plaintiff's loss or injury. *See id.* (explaining, under a theory of unjust enrichment, a plaintiff "is entitled to restitution…the damages remedy and the restitution remedies are always conceptually

distinct. To measure damages, the courts look at the plaintiff's loss or injury; to measure restitution, the courts look at the defendant's gain or benefit.")(internal citation omitted). Moreover, a plaintiff's entitlement to restitution pursuant to a claim of unjust enrichment cannot be speculative. *City of Fort Smith v. Merriott*, 2023 Ark. 51, ¶ 6, 660 S.W.3d 809, 814 (where a plaintiff's calculation of the unjust benefit is "merely speculative, [] restitution will not be awarded."); *El Paso Prod. Co. v. Blanchard,* 371 Ark. 634, 647, 269 S.W.3d 362, 373-74 (2007)(finding plaintiff's self-serving testimony regarding the value of the alleged unjust enrichment was too speculative to sustain a claim).

Accordingly, Plaintiff's conclusory and unsupported allegations regarding the amount of money that a hypothetical cybercriminal – and not RFM – *could* sell her personal information for on the black market is woefully insufficient to support a claim for unjust enrichment, as she fails to allege that RFM actually received a monetary benefit, and fails to set forth a nonspeculative value of any alleged benefit RFM received. The Unjust Enrichment claim must be dismissed.

**7.      Plaintiff's Claim For Declaratory Judgment And Injunctive Relief Should Be Dismissed, As Plaintiff Cannot Establish The Required Elements.**

Finally, Plaintiff asks this Court to issue a declaratory judgment, declaring RFM (1) owes a legal duty to secure the PII of Representative Plaintiff and Class Members; (2) continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII, and (3) is engaged in ongoing breaches of its legal duty continue to cause Representative Plaintiff harm. (ECF No. 2 ¶¶ 184). Plaintiff also asks the Court to issue an injunction, directing RFM to implement a litany of cybersecurity procedures. (ECF No. 2 ¶¶ 185). The requested declaratory relief is simply a restatement of the elements of Plaintiff's negligence claims, asks this Court to issue determinations of fact with respect to the reasonableness of RFM's conduct, and is not based on any imminent or substantial risk of future harm.

"In a case of actual controversy within its jurisdiction. . .any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declarations. . . ." 28 U.S.C. § 2201. A case of actual controversy is met where, "there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Caldwell v. Gurley Refining Co.*, 755 F.2d 645, 649 (8th Cir. 1985). Moreover, "[f]or a declaratory judgment to issue, there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" *Ashcroft v. Mattis*, 431 U.S. 171, 172, 97 S. Ct. 1739, 1740 (1977) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937).

Where, as here, a plaintiff also seeks injunctive relief, they must show, "irreparable harm and inadequacy of legal remedies." *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07, 3 L. Ed. 2d 988, 79 S. Ct. 948 (1959)). "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021). Importantly, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy," supporting an award of declaratory or injunctive relief. *Simes v. Ark. Judicial Discipline and Disability Comm'n*, 734 F.3d 830, 835 (8th Cir. 2013); *Webb v. Smith*, No. 4:17CV00660 JLH, 2018 U.S. Dist. LEXIS 45295, at *7-8 (E.D. Ark. Mar. 20, 2018).

Here, Plaintiff alleges, in a conclusory fashion, that because the subject breach occurred, "[t]he risk of another such breach is real, immediate, and substantial." (ECF No. 2 ¶¶ 186), and, "[u]nless a Class-wide injunction is issued, Defendant *may* continue failing to secure Class

36

Members' PII properly, and Defendant *may* continue to act unlawfully." (ECF No. 2 ¶¶ 37). Plaintiff's assertion is purely speculative and fall short of stating a claim for injunctive or declaratory relief.  *See Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare*, 602 F.2d 150, 154 (8th Cir. 1979) ("[T]he speculative nature of the threatened harm support[s] the denial of injunctive relief.").

In rejecting a similar claim for declaratory and injunctive relief based on conclusory allegations regarding the risk of subsequent data breaches, the district court in *Hall v. Centerspace* reasoned, there was "no suggestion that [defendant] is currently being targeted by hackers, or that something about their operations makes them uniquely vulnerable to incursions. Nothing in [plaintiff]'s pleading transforms the *possibility* that [defendant] might suffer another data breach into an imminent or substantial risk." *Hall v. Centerspace, LP*, No. 22-cv-2028 (KMM/DJF), 2023 U.S. Dist. LEXIS 83438, at *11 (D. Minn. May 12, 2023)(emphasis in original). Likewise, in *Thomas v. Pawn Am. Minn.,* the district court dismissed a plaintiff's claim for injunctive and declaratory relief, finding,

> The only harm that would be redressed by plaintiffs' proposed injunction and declaration is the harm that would be caused by a future breach of [defendant]'s computer network. It is certainly possible that [defendant] will suffer a second breach (whether or not it takes the requested security precautions) and certainly possible that plaintiffs will be harmed if a second breach occurs (even though their private information has already been stolen). But the law requires not just possibility but imminence. *Nothing alleged in the complaint indicates that a second breach of [defendant]'s computer system is imminent.* Rather, plaintiffs allege only that they "have an interest in ensuring that their [private information], which is believed to remain in the possession of [Pawn America], is protected from further breaches." True enough, but every human being has an interest in ensuring that any entity that possesses his or her private information keeps that information safe. The universal interest in the security of one's private data does not equate to a [*9] substantial and imminent risk of harm.

*Thomas v. Pawn Am. Minn., LLC (In re Pawn Am. Consumer Data Breach Litig.)*, No. 21-CV-2554 (PJS/JFD), 2022 U.S. Dist. LEXIS 140107, at *8-9 (D. Minn. Aug. 8, 2022).

Plaintiff's claim for declaratory and injunctive relief is also deficient, as plaintiff cannot show that irreparable harm would occur absent injunctive relief, and plaintiff has an adequate remedy at law. Tellingly, Plaintiff's claim mirrors her claim for negligence. Plaintiff simply asks this court to issue a judgment declaring the truth of her assertions that RFM owed her a duty, breached the duty, and continues to breach the duty. (ECF No. 2 ¶¶ 184). Should Plaintiff prevail on her negligence and other claims for damages, she will have recovered an adequate remedy at law. *Adam-Mellang v. Apartment Search*, 96 F.3d 297, 300 (8th Cir. 1996)(finding, injunctive relief unavailable where plaintiff "has an adequate remedy at law, namely, the damages and other relief to which she will be entitled if she prevails in this action."); *Guy Carpenter & Co. v. John B. Collins Assocs.*, 179 F. App'x 982, 983 (8th Cir. 2006)(same). Plaintiff's requested money damages stemming from the same harm also establishes the absence of irreparable harm. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987)(finding, plaintiff not entitled to injunctive relief because, "If [defendant]'s actions are ultimately proved unlawful, [plaintiff] will not have suffered irreparable harm, for its injury …can be remedied in a suit for money damages.").

Plaintiff's allegations do nothing to build upon the mere possibility of a future breach, and fall short of establishing a 'real, immediate, and substantial' risk of future harm warranting declaratory or injunctive relief.  Furthermore, Plaintiff cannot establish that irreparable harm would occur if the Court does not issue injunctive relief, nor can she rebut the clear fact that she has an adequate remedy at law – namely her claims for money damages. Accordingly, Plaintiff's claim for such declaratory and injunctive relief should be dismissed.

## V.   CONCLUSION

WHEREFORE, Defendant, REGIONAL FAMILY MEDICINE, P.A., respectfully requests that this Honorable Court enter an Order dismissing Plaintiff's Complaint without leave

to amend, and for any further relief deemed justified pursuant to both Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6).

Respectfully submitted:

*/s/ James W. Davidson*
James W. Davidson, (admitted *Pro Hac Vice*)
IL ARDC No. 6281542
O'Hagan Meyer LLC
One East Wacker Drive, Suite 3400
Chicago, Illinois  60601
312.422.6100 –T
312.422.6110 – F
jdavidson@ohaganmeyer.com
One of the Attorneys for
REGIONAL FAMILY MEDICINE, P.A.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of February, 2024, the foregoing *MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6)* was electronically filed with the Clerk of the Court using the CM/ECF Filing System which will send notification of such filing to all attorneys and counsel of record who have entered an appearance for notification of electronic filings.

<div style="margin-left: 40%;">

*/s/ James W. Davidson*
James W. Davidson, IL ARDC No. 6281542
O'Hagan Meyer LLC
One East Wacker Drive, Suite 3400
Chicago, Illinois  60601
312.422.6100 –T
312.422.6110 – F
jdavidson@ohaganmeyer.com

</div>